UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 17-cv-4405 |
| v. | Judge John Robert Blakey |
| Z INVESTMENT PROPERTIES, LLC, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff United States sued to enforce federal tax liens that it claims attach to a parcel of real property in Mundelein, Illinois. The collective defendants represent private and government entities with interests in the property. Defendants Z Investment Properties, LLC, and Chicago Title Land Trust Company (Defendants) moved for summary judgment [24], and Plaintiff cross-filed for summary judgment [30]. For the reasons explained below, this Court denies Defendants' motion and grants Plaintiff's motion.

I.  Background

   A.  This Case

The parties agree on nearly all the facts of this case. From 2000 to 2004, the Internal Revenue Service (IRS) assessed federal income taxes against Carroll V. Raines. PSOF ¶ 5; [30-2].[1] For each of those years, a delegate of the Secretary of

---

[1] The facts come primarily from the parties' Local Rule 56.1 statements. DSOF refers to Defendants' statement of undisputed facts [16-1], with Plaintiff's responses [38] cited as R. DSOF. PSOF refers to Plaintiff's statement of undisputed facts [31], with Defendants' responses [36] cited as R. PSOF.

1

the Treasury assessed various sums against Raines for unpaid federal income taxes, penalties, and interest. PSOF ¶ 5. In July 2007, a delegate of the Secretary notified Raines of those assessments and demanded payment for the balance due. *Id.* ¶ 6. Raines never paid his federal income tax liabilities. *Id.* ¶ 7.

At the time of the July 2007 tax assessment, Raines held an interest in the property at issue in this case (the Property), located at 18952 W. Oak Avenue, Mundelein, Lake County, Illinois. PSOF ¶¶ 1, 11. Raines owned the Property with his wife. *Id.* ¶ 10. Raines died in July 2009. DSOF ¶ 2. Because his wife predeceased him, Raines was the sole owner of the Property at the time of his death. PSOF ¶ 13.

In August 2010, the IRS filed a Notice of Federal Tax Lien for Raines' federal income tax liabilities with the Lake County Recorder of Deeds. *Id.* ¶ 14. The IRS incorrectly filed the notice in the name of "Carrol V. Raines," rather than "Carroll V. Raines." *Id.* ¶ 14; DSOF ¶ 3. The notice indicated that the IRS had assessed taxes and penalties against Raines in the amount of $115,022.42, which remained unpaid. [16-1] at 8. As a result, liens "in favor of the United States" attached to "all property and rights to property belonging to this taxpayer" for the amount owed. *Id.* The notice identified Raines' residence as the Property by listing its street address. *Id.* It did not contain any further description of the Property or a permanent index number. *Id.*; DSOF ¶ 7.

---

PSAF refers to Plaintiff's statement of additional undisputed facts [38], with Defendants' responses [39] cited as R. PSAF. References to additional filings are by docket entry number.

In November 2010, Keith Raines—Carroll's son—recorded an Affidavit of Heirship with the Lake County Recorder, stating that Carroll Raines died intestate and left six heirs, including Keith. *See* PSOF ¶ 15; [16-1] at 5. That month, all six heirs conveyed their interest in the Property to Defendant Chicago Title Land Trust Company by quitclaim deeds in trust. PSOF ¶¶ 16–21.

The Lake County Recorder's website allows anyone to search its land records through an online database. *Id*. ¶ 22. Members of the public can conduct unlimited searches for a fee of $5.00 per day. *Id*.; *see also* Lake County, Illinois Recorder of Deeds, *Land Records Search*, https://lc38.lakecountyil.gov/eSearch/User/Login.aspx (last visited Mar. 12, 2018).[2] Users can search the Recorder's database in a number of ways: by a person's exact first and/or last name; by a first and/or last name beginning with certain letters (the "Begins With" search function); or by first and/or last names that sound similar to the search term (the "Sounds Like" search function). PSOF ¶ 23; [30-1] ¶ 3.

A search of the Recorder's database for the exact first and last name "Carroll Raines" (the correct spelling) shows judgments against Raines[3] that note his aliases, including "C V Raines" and "Carol Raines." *See* [30-1] ¶ 6; [30-5] at 7; PSOF ¶ 24. That search does not, however, display the federal tax liens. *See* [30-5]. A search of the database for all last names beginning with "Raines" and first names

---

[2] This Court may take "judicial notice of public records and government documents, including those available from reliable sources on the Internet." *Sleeter v. Actavis Totowa, LLC*, No. 10-653-GPM, 2010 WL 3781261, at *2 n.1 (S.D. Ill. Sept. 21, 2010) (citing *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)).

[3] Here, and in the rest of this opinion, "Raines" refers to Carroll Raines.

3

beginning with "C" reveals the federal tax liens, despite the misspelling of Raines' first name. PSOF ¶ 25. A "Sounds Like" search for all last names like Raines and all first names like Carroll also turns up the federal tax liens. *Id.* ¶ 26. Finally, a title search performed by the Chicago Title Insurance Company on behalf of the IRS revealed the Notice of Federal Tax Lien. *See* [37-3] at 1, 3; PSAF ¶ 8.

Plaintiff sued to enforce the federal tax liens on the Property in June 2017. [1]. Defendants seek to block enforcement and moved for summary judgment in August 2017, amending their brief in September. [16, 25]. The remaining named defendants (PNC Bank; Lake County, Illinois; and the Village of Mundelein) entered into a stipulation with Plaintiff in November 2017 on the priority of their liens relative to the federal tax liens. [28]. That same month, Plaintiff moved for summary judgment on the sole remaining issue of the enforceability of the federal tax liens. *See* [22] at 3; [30]. This opinion addresses the parties' pending motions for summary judgment, and one evidentiary dispute.

### B. Evidentiary Rules

In their response to Plaintiff's motion, Defendants submitted a signed declaration from William Bond, a title insurance executive. *See* [35-1]. In his declaration, Bond offers sworn statements describing a title search that he conducted on the Property; the type of index maintained by the Lake County Recorder of Deeds; and his opinions as to whether the federal tax liens against Raines are within the chain of title, whether "a reasonable and diligent" search would find the liens, and what methods an "experienced and capable title searcher" would use to conduct that search. *See, e.g., id.* ¶¶ 2, 4–5, 11, 14. Plaintiff objects to

4

Bond's declaration in full as undisclosed expert testimony and in part as improper legal conclusions. [41] at 4, 6.

To the extent that Bond's statements purport to offer expert opinions, this Court strikes those paragraphs. Defendants never disclosed an expert witness or offered an expert report, as required by Federal Rule of Civil Procedure 26(a); in fact, Defendants never disclosed Bond as a witness at all. *See* [41] at 5; [22] at 3, 4; [26]. Under Rule 37(c)(1), "exclusion of non-disclosed evidence is automatic and mandatory unless non-disclosure was justified or harmless." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (internal quotation and punctuation marks omitted). Rule 37 bars the use of such evidence on any motion, as well as at trial.

Defendants make no attempt to justify their undisclosed use of Bond. *See generally* [35]. To determine whether noncompliance with Rule 26(a) is harmless, courts consider: (1) "the prejudice or surprise" to the opposing party; (2) the party's ability to cure the prejudice; (3) "the likelihood of disruption to the trial"; and (4) the "bad faith or willfulness" of the failure to disclose. *Tribble*, 670 F.3d at 760 (internal quotation marks omitted). Here, Defendants' noncompliance prejudiced Plaintiff, including by denying Plaintiff the opportunity to disqualify or depose Bond, or to retain rebuttal experts. *See id.*; *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004).

Although this Court could authorize expert discovery in advance of trial, mitigating the second and third factors, that fact alone does not cure the prejudice to Plaintiff here. *See Finwall v. City of Chicago*, 239 F.R.D. 504, 507 (N.D. Ill. 2006)

5

(noting that "late disclosure is not harmless" merely because additional discovery may be conducted). Both parties clearly expect this case to reach a resolution at summary judgment, as evidenced by their agreement to postpone *any* discovery until after this Court rules on their motions. *See* [22] at 3, 4. Indeed, given that this case presents only two narrow, primarily legal issues—one of which has been resolved by stipulation—that expectation is justified. *See id.* at 3; [28]. In these circumstances, Defendants' decision to slip in an undisclosed witness at the back-end of summary judgment briefing—after disclaiming any need for discovery—shows willfulness and bad faith. *See JFB Hart Coatings, Inc. v. AM Gen. LLC*, 764 F. Supp. 2d 974, 989 (N.D. Ill. 2011) (misleading representations constitute evidence of bad faith). Accordingly, this Court excludes paragraphs 5–7, 10–12, 14, and 20 of Bond's declaration as undisclosed expert testimony unexcused by Rule 37.

This Court also strikes those paragraphs that constitute improper legal conclusions. Expert opinions that offer legal conclusions are generally inadmissible because they do not "assist the trier of fact," as expert opinions must. *See Richman v. Sheahan*, 415 F. Supp. 2d 929, 944–45 & nn.14–15 (N.D. Ill. 2006); *see also* Advisory Committee Note to Fed. R. Evid. 704; *West By and Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997) (expert witness "not allowed to draw" a "legal conclusion"). Expert testimony "as to legal conclusions that will determine the outcome of the case" is categorically inadmissible. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). That precisely describes Bond's statements in paragraphs 10, 14, 20, and 21, in which he opines on

6

whether the federal tax liens against Raines are within the Property's chain of title. To the extent that these opinions constitute legal conclusions on the validity of the federal tax liens—the ultimate issue for the Court here—this Court strikes those paragraphs as improper legal conclusions.

Additionally, Bond phrases his opinions about what constitutes a "reasonable and diligent search" in terms of "inadequately explored legal criteria," and thus improperly seeks to establish the answer to a legal question beyond the province of an expert. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (quoting Advisory Committee Note to Fed. R. Evid. 704); *see also Waymire*, 114 F.3d at 352. In stating (in conclusory fashion and without analysis) what constitutes a "reasonable" search, Bond attempts to expound the standard of "constructive notice" that excuses subsequent purchasers of encumbered property under federal law. *See* 26 U.S.C. §§ 6323(a), (f), (h)(6); *Brightwell v. United States*, 805 F. Supp. 1464, 1470 (S.D. Ind. 1992). Experts may not explicate legal standards; this remains the Court's role. *See Hygh*, 961 F.2d at 364; *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1024 (N.D. Ill. 2010) (District courts should not permit "experts to opine on what the law required.") (internal quotation marks omitted). This rule provides alternate grounds to exclude paragraphs 11 and 12 of Bond's declaration.

## II. Legal Standard

Courts should grant summary judgment when no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of fact exists when, based upon the evidence, a reasonable jury

could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017). The moving party bears the burden of establishing the lack of genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

Plaintiff sued to enforce federal tax liens that it claims attach to property now held by Defendants. [1]. Defendants seek to bar enforcement of the liens because they are invalid and because Defendants purchased the property without notice of the liens. *See* [24].

### A. The Liens are Valid

After the IRS assessed taxes against Raines and he failed to pay them, tax liens attached to "all property and rights to property, whether real or personal, belonging" to Raines. 26 U.S.C. § 6321; *see also United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720–21 (1985). Thus, those liens attached to the Property in 2007. *See* PSOF ¶¶ 5, 11; *Nat'l Bank*, 472 U.S. at 719 (noting that a federal tax lien "generally arises when an assessment is made"). Because Raines' tax liability remains unpaid, the liens remain in force. *Id.* at 720.

Defendants, however, contend that the federal tax liens against the Property are invalid because the notice of the liens misspells Raines' first name and lacks a legal description or permanent index number for the Property. *See* [25] at 1, 2. The misspelling of Raines' name relates to whether Defendants' had notice of the liens, as discussed below. But neither of Defendants' arguments provides grounds for finding that the federal tax liens are invalid.

Federal law governs the form and content of federal tax liens and notices thereof. *See Macklin v. United States*, 300 F.3d 814, 820, 821 n.8 (7th Cir. 2002); *see also United States v. Union Cent. Life Ins. Co.*, 368 U.S. 291, 294–95 (1961). Specifically, the notice must conform to the applicable provisions of the Internal Revenue Code and its accompanying regulations. *Macklin*, 300 F.3d at 820. State law is irrelevant to that determination. *Id.* at 821 n.8; *see also* 26 C.F.R. § 301.6323(f)-(1)(d). Federal regulations require the notice of a federal tax lien to be filed on Form 668, which "must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose regardless of the method used to file the notice of Federal tax lien." § 301.6323(f)-(1)(d). The relevant regulation specifically precludes any requirement that the notice contain "a description of the property subject to the lien," regardless of any contrary state law. *Id.*; *see also Union Cent.*, 368 U.S. at 295–96. Finally, the notice "shall be filed in one office" in the state or county where the property subject to the lien is situated. § 301.6323(f)-(1)(a)(1).

Here, the IRS properly completed and filed Form 668. The notice identified Raines (albeit with a minor misspelling, discussed below) and listed his tax

9

liabilities giving rise to the liens, and the dates of their assessments. *See* [16-1] at 8. The IRS filed the notice with the Lake County Recorder of Deeds, the county where the Property is situated. *See id.*; PSOF ¶¶ 1, 14. Thus, the Notice complied with all applicable federal regulations. *See* § 301.6323(f)-(1)(d).

In short, Plaintiff has valid federal tax liens against the Property and filed a valid notice of those liens. No rule provides that a minor misspelling invalidates federal tax liens, and the authorities that Defendants cite do not show otherwise. *See, e.g.*, *In re Crystal Cascades Civil, LLC*, 398 B.R. 23, 36 (Bankr. D. Nev. 2008) (noting that a "minor misspelling" in a taxpayer's name did not undermine validity of notice, but failure to use any form of the "debtor's legal name" did). The only cases suggesting such a rule pre-date searchable, electronic databases. *Compare Haye v. United States*, 461 F. Supp. 1168, 1173–74 (C.D. Cal. 1978) (finding notice insufficient because misspelling placed the lien "approximately nine pages and one thousand names prior to its proper location" in the recorder's physical index), *with United States v. Montesinos*, No. 09-cv-6054-VB, 2012 WL 4054132, at *4 (S.D.N.Y. Aug. 31, 2012) (finding that the availability of easy, inexpensive searches of electronic databases places "the onus" on subsequent parties in interest "to ensure there are no other liens on the property"). And even those earlier cases recognized that no categorical rule invalidated notices with minor errors. *See Haye*, 461 F. Supp. at 1173 (noting that "a misspelling does not Automatically [sic] render the tax lien invalid"). Rather, the question is whether the later party in interest had sufficient notice of the lien, *id.*, which this Court addresses next.

B.  **The Liens are Enforceable**

Defendants' central argument against the enforcement of the liens is that the IRS misspelled Raines' first name in its Notice of Federal Tax Lien. *See* [25] at 1–2; [35] at 1–2; [40] at 2. This Court has explained that this error does not categorically invalidate the lien. The remaining issue is whether Defendants may block enforcement of the liens because the misspelling deprived them of sufficient notice when they acquired their interest in the Property. For the reasons explained below, this Court finds that Defendants had adequate notice and the lien may therefore be enforced.

In general, the "transfer of property subsequent to the attachment of the lien does not affect the lien," which follows the property regardless of ownership. *United States v. Bess*, 357 U.S. 51, 57 (1958); *see also United States v. Davenport*, 106 F.3d 1333, 1336 (7th Cir. 1997). But an exception to this rule prevents enforcement of a lien against a "purchaser," defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest" in the relevant property without notice. 26 U.S.C. §§ 6323(a), (h)(6). Notice, in such cases, means "constructive notice," which is determined by asking whether "reasonable inspection" of the relevant local index "will reveal the existence of the lien." *Brightwell*, 805 F. Supp. at 1470 (citing 26 U.S.C. § 6323(f)); *see also Sgro v. United States*, 609 F.2d 1259, 1261 (7th Cir. 1979) (noting that federal tax liens do not

compromise property interests of subsequent purchasers "when a complete record search does not disclose a tax lien").[4]

Many courts have framed the question as whether "a reasonable and diligent search would have revealed the existence of the notices of the federal tax liens" under the information contained in the notices. *In re Spearing Tool & Mfg. Co.*, 412 F.3d 653, 656 (6th Cir. 2005) (internal quotation marks omitted); *see also Tony Thornton Auction Serv., Inc. v. United States*, 791 F.2d 635, 639 (8th Cir. 1986); *Crystal Cascades*, 398 B.R. at 34–35 (citing *Kivel v. United States*, 878 F.2d 301, 303–04 (9th Cir. 1989)). Other courts, following the language of § 6323(f), ask what a "reasonable search" of land records would uncover. *See Montesinos*, 2012 WL 4054132, at *3; *Brightwell*, 805 F. Supp. at 1470. Whatever the precise language used, the question here is whether a reasonably conducted search of the Lake County land records would have revealed the existence of the federal tax liens against Raines, in light of the misspelling of Raines' first name in the notice.

The clear weight of precedent on this issue supports finding that minor misspellings in a notice of a federal tax lien do not bar enforcement of the lien. *See Spearing Tool*, 412 F.3d at 656 ("An IRS tax lien need not perfectly identify the taxpayer."); *Hudgins v. IRS*, 967 F.2d 973, 976 (4th Cir. 1992); *Kivel*, 878 F.2d at 305; *Tony Thornton*, 791 F.2d at 639; *Richter's Loan Co. v. United States*, 235 F.2d 753, 755 (5th Cir. 1956) (holding that the "slight difference in spelling the name

---

[4] Even though there may be some reason to doubt whether the "reasonable inspection" test set out in 26 U.S.C. § 6323(f) applies to purchasers in Illinois, *see Davis v. United States*, 705 F. Supp. 446, 450–51 (C.D. Ill. 1989), the parties do not contest this point and this Court's ruling remains the same either way.

'Freidlander' instead of 'Friedlander' could not mislead searchers of the record, who were contemplating doing business with Friedlander," and so provided adequate notice); *Montesinos*, 2012 WL 4054132, at *3–4; *Whiting-Turner/A.L. Johnson v. P.D.H. Dev., Inc.*, 184 F. Supp. 2d 1368, 1379 (M.D. Ga. 2000) (applying "substantial compliance" standard and finding that "PD Hill Development Inc." provided adequate notice for tax lien on "P.D.H. Development Inc."); *Brightwell*, 805 F. Supp. at 1471 ("Initially, it is clear that lien notices and index cards need to comply only substantially, rather than perfectly, to convey adequate notice of a lien."); *cf. Crystal Cascades*, 398 B.R. at 36 ("This is not a case where the IRS made a minor mistake" in its tax lien notice, such as by "making a minor misspelling in the taxpayer debtor's name."). Given this persuasive precedent, and the factual record as a whole, this Court finds that the minor misspelling of Raines' first name ("Carol" rather than "Caroll") does not invalidate the IRS' notice. To hold otherwise would impose a "requirement that tax liens identify a taxpayer with absolute precision," which would unduly burden the government's "tax-collection efforts." *Spearing Tool*, 512 F.2d at 656.

The majority of cases cited here by Defendants—invalidating liens based upon minor errors—predate the availability of electronic databases of land records. *See Montesinos*, 2012 WL 4054132, at *4 (collecting cases). The one case cited by Defendants where the parties *did* have access to an electronic database is likewise distinguishable from the present case. In *Crystal Cascades*, the court found that the IRS' erroneous use of "Crystal Cascades, LLC, a corporation," rather than

13

"Crystal Cascades Civil, LLC, a Nevada limited liability company," on the lien notice constituted a "nontrivial" error. 398 B.R. at 26. This provided insufficient notice because the types of searches available in the relevant county's land record database would not reveal the lien to anyone using "the debtor's real name, or any reasonable truncation of that name." *Id*. at 37. A searcher would have needed to inspect not only the county's records but the Nevada Secretary of State's records, which the court refused to require of subsequent purchasers. *Id*. at 36.

Here, by contrast, not only was the IRS' error less severe, but the multiple search functions available on the Lake County Recorder's website meant that a cursory search using "any reasonable truncation" of Raines' name would have revealed the federal tax liens. *Id*. at 37; *see also* PSOF ¶¶ 25, 26. This case therefore closely resembles *Montesinos*, where the relevant county appears to provide almost exactly the same search functions as Lake County. *See* 2012 WL 4054132, at *4. The availability of such multifaceted tools raises the standard for what constitutes a "reasonable" search. *See id*.; *see also Spearing Tool*, 412 F.2d at 656–57. In *Montesinos*, as here, the IRS' sole error was a one-letter mistake in the taxpayer's first name. *See* 2012 WL 4054132, at *4. There, as here, this error did not make the lien undiscoverable pursuant to a reasonable search, since a partial-name, last-name-only, "begins with," or "sounds like" search would have revealed the lien. *See id*.; PSOF ¶¶ 23, 25, 26. Given the ease and low cost of conducting such searches, asking interested parties to undertake at least one of these variants is eminently reasonable. *See Montesinos*, 2012 WL 4054132, at *4; *see also*

14

*Spearing Tool*, 412 F.2d at 656. Accordingly, the notice as filed provided sufficient notice to subsequent purchasers like Defendants, and the liens may be enforced.

One other line of cases provides support for this Court's ruling. Where an exact search of the taxpayer's actual name reveals documents "that would cause a reasonable person to go outside the index and examine the lien notices themselves," the searcher "*must* look at those notices." *Brightwell*, 805 F. Supp. at 1470 (citing *Kivel*, 878 F.2d at 304) ("It is evident that as to documents that are in the actual chain of title the searcher must at least look at such documents as may have a current effect and must then act on the notice imparted.")). Here, an exact search for Raines' name, correctly spelled as "Carroll Raines," in the Lake County land record database reveals a number of aliases for Raines, including "Carol Raines." *See* [30-1] ¶ 6; [30-5] at 7; PSOF ¶ 24. The results of this initial search—using only Raines' *actual* name—show that various legal documents listed Raines' name under these variations. In such circumstances, a reasonable search demands that the searcher act upon the notice of aliases provided by that initial search, for example by using one of the other, flexible search functions provided by the Lake County Recorder. *See Kivel*, 878 F.2d at 304; *Brightwell*, 805 F. Supp. at 1470. That reasonable search would have revealed the federal tax liens at issue here, *see* PSOF ¶¶ 23–26, which means that the Notice of Federal Tax Liens filed against Raines provided sufficient notice, *see Brightwell*, 805 F. Supp. at 1470, 1473.

IV. **Conclusion**

This Court denies Defendants' motion for summary judgment [24], and grants Plaintiff's motion for summary judgment [30].

15

The remaining defendants in this case are different private and governmental entities with mortgage and lien interests attaching to the Property. *See* [28]. The priority of their interests relative to Plaintiff's interests has been resolved by stipulation, *see id.*, which disposes of the only other issue in this case, *see* [1]; [22] at 3. Accordingly, judgment is entered in favor of Plaintiff and against Defendants on Plaintiff's complaint [1].

Finally, the United States may enforce the federal tax liens against the Property and sell the Property free and clear of all rights, titles, claims, and interests of the parties, including any rights of redemption, except that the proceeds of the sale shall be distributed according to the stipulation previously reached among the parties. *See* [28]. This Court directs the United States to submit a proposed order of final judgment within 30 days of the entry of this order. This Court strikes all other dates and deadlines.

Dated: April 2, 2018

Entered:

_____
John Robert Blakey
United States District Judge